IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **J&K DELI, INC.**, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil No. 19-03282-JMC |
| **UNITED STATES OF AMERICA**, | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

The Plaintiff, J&K Deli, by and through undersigned counsel, pursuant to Fed. R. Civ. 12, 56(d), and Local Rule 105, hereby files and serves its Memorandum in Opposition to the Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Motion to Dismiss") and states:

Summary of Argument

This action is for *de novo* judicial review of the Final Agency Decision ("FAD"), dated October 21, 2019, issued by USDA's Food and Nutrition Service ("FNS"), which withdrew the authorization of the retail food store owned by Plaintiff, Harry's Deli's, to participate in the Supplemental Nutrition Assistance Program ("SNAP"). There is no reasonable dispute that the Complaint properly alleges a cause of action for judicial review of the FAD or that Congress intended to provide aggrieved retailers with a right to *de novo* review of FNS's FAD. The crux of Defendant's Motion to Dismiss is that "FNS determined that well over 50% of [Harry's Deli's]

revenue was impermissibly derived from prepared foods."[1]  The Motion to Dismiss is devoid of any argument whatsoever supporting dismissal of the complaint and does not come close to meeting its burden under Fed. R. Civ. P. 12(b)(6).

The crux of Defendant's motion is one for summary judgment.  Defendant's motion is wholly premature and should be deferred or denied for the reasons specified in herein, as well as in the declarations of Ho Song Hwang and Stewart Fried.  When viewed in a light most favorable to the Plaintiff, there are material factual issues in dispute, including with regard to whether prepared foods sold at Harry's Deli were purchased for home consumption or not.  The Final Agency Decision was devoid of any analysis or support for its determination that Harry's Deli is a restaurant.  This is indisputable because there is no evidence in the Administrative Record that demonstrates – conclusively or otherwise, that ARO Karagiorgos determine where Harry's Deli's customers intended to consume prepared foods.  To the contrary, the Hwang Declaration establishes that Harry's Deli intended for all prepared foods it sold to be consumed at home.

Factual Background

Plaintiff Harry's Deli operates a retail food store located in the Northeast Market in a deeply impoverished neighborhood in Baltimore City. Complaint at ¶ 2. During November 2018, Harry's Deli timely responded to correspondence from FNS related to the reauthorization of its SNAP license. *Id.* at ¶ 23.  On April 3, 2019, FNS requested additional information from Harry's

---

[1] It is important to note that at no time did FNS accuse or otherwise contend that Harry's Deli violated any SNAP regulations, that it made any unauthorized sales, or that it did anything illegal. To the contrary, FNS's sole argument is that Harry's Deli should not be permitted to participate in SNAP because it believes that more than 50% of its gross receipts are from the sales of cooked or heated foods or from the sale of prepared foods not intended for home consumption or home preparation.

Deli. *Id.* at ¶ 24.  On April 10, 2019, Harry's Deli timely responded to FNS's request for additional information. *Id.* at ¶ 25.

On April 25, 2019, FNS sent a letter to Harry's Deli advising that it was withdrawing Harry's Deli's SNAP authorization ("Withdrawal Letter").  *Id.* at ¶ 26.  In the Withdrawal Letter, FNS determined, without a proper basis, that Harry's Deli was primarily a restaurant, because "more than 50 percent of your total gross retail sales are from "heated foods" and/or "prepared foods."  *Id.* at ¶ 26.  Of note, the Withdrawal Letter, relying on language in FNS's regulation, stated that "'prepared foods' are hot or cold foods *not intended for home preparation and/or home consumption*, including prepared foods that are consumed on the premises or sold for carryout."  *Id.* at ¶ 28 (emphasis added).

On May 3, 2019, Harry's Deli timely requested Administrative Review of FNS's withdrawal of its SNAP authorization.  *Id.* at ¶ 30.  On September 5, 2019, Harry's Deli submitted its response in support of its Request for Administrative Review.  *Id.* at ¶ 36.  On October 21, 2019, FNS issued the FAD.  *Id.* at Exhibit A.

The FAD affirmed FNS's withdrawal of the Store's SNAP authorization based on the determination that the Store was a restaurant. *Id.*  In the FAD, ARO Karagiorgos concluded that "the Retailer Operations Division determined that the Appellant's *prepared food sales* was [sic] more than 80% of its total sales." FAD at 4 (emphasis added).  Neither the Withdrawal Letter nor the FAD was based on a fact-based determination that some or all prepared food sales were not intended for home consumption and/or preparation.  On November 14, 2019, the Plaintiff timely filed this judicial review proceeding.

The Supplemental Nutrition Assistance Program and FNS's Retailer Authorization Regulations

SNAP is the nation's largest food security program, currently providing supplemental nutritional benefits for more than 42 million Americans.[2] The Food and Nutrition Act of 2008, 7 U.S.C. § 2011 et seq. ("Food and Nutrition Act"), is the legislative enactment governing the SNAP program. FNS has been delegated authority, pursuant to 7 U.S.C. § 2013(a), to formulate and administer a supplemental nutrition assistance program.

Authorized SNAP beneficiaries receive benefits on an Electronic Benefits Transfer card ("EBT card"), which card is typically issued by a state agency. 7 U.S.C. § 2013(a) also provides that "[t]he benefits so received by such households shall be used only to purchase food from retail food stores which have been approved for participation in the supplemental nutrition assistance program." *See also* 7 U.S.C. § 2016(b).

7 U.S.C. § 2018 governs authorization of retail food stores. "Retail food store" is a defined term under the Food and Nutrition Act. 7 U.S.C. § 2012(o). The definition of "retail food store" does not define what a "restaurant" is and does not address "ineligible firms." 7 U.SC. § 2018(a)(2) provides authority to the USDA Secretary to promulgate regulations governing the authorization of SNAP retailers. Pursuant to such delegation of authority, FNS has promulgated regulations governing the authorization of SNAP retailers. 7 C.F.R. § 278.1. Of critical importance to this case is FNS's revision to subsection (b)(1)(iv) of that regulatory provision. That subsection is entitled "Ineligible Firms" and provides, in pertinent part,

> In addition, firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross sales in foods cooked or heated on-site by the retailer before or after purchase; *and hot and/or cold prepared foods not intended for home preparation or consumption*, including prepared foods that are consumed on the premises or sold for

---

[2] FNS has not published beneficiary data since April 2020, possibly for political reasons. Due to the pandemic and the massive increase in unemployment during the past six months, many believe that over 50 million Americans currently receive SNAP benefits.

> carryout, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout.

*Id.* (emphasis added). This portion of FNS's retailer authorization regulation is relatively new, having been promulgated during December 2016. *Enhancing Retailer Standards in the Supplemental Nutrition Assistance Program (SNAP)*, 81 FR 90675 (December 15, 2016).

Neither the Food and Nutrition Act nor FNS's regulations define many of the terms used in FNS's Ineligible Firms regulation. For example, there is no statutory or regulatory definition of "restaurant," or "carryout." FNS also does not appear to have any guidance or other issuances concerning "prepared foods not intended for home preparation or consumption." With this framework in mind, it is critical to keep in mind that any regulation promulgated by a federal agency must not be arbitrary, capricious, or in excess of statutory authority.

The Administrative and Judicial Review Process

7 U.S.C. § 2023 and 7 C.F.R. Part 279 govern SNAP retailer administrative and judicial review proceedings. FNS's administrative review process is not one consistent with due process. Rather, it is a one-sided procedure that involves no discovery, no evidentiary hearings, and no ability to cross-examine FNS personnel. Decisions are made by Administrative Review Officers (AROs), not administrative law judges or others with formal legal training.[3] The sole ability for aggrieved retailers to discover any information about the proceedings or FNS's decision-making process is through a Freedom of Information Act ("FOIA") Request. That process is rarely fruitful because FNS fails to produce relevant records to the retailer despite relying upon those records during the administrative process.

---

[3] Upon information and belief, no AROs are members of the bar of any state.

5

Judicial review proceedings, on the other hand, are far broader and are not similar to cases arising under the Administrative Procedure Act ("ARA").  Unlike cases arising under the APA, SNAP judicial review proceedings brought pursuant to 7 U.S.C. § 2023 like this case, provide for *de novo* review.   The scope of review in an action of this nature grants "a trial *de novo* well beyond the scope of review available under the general provisions of the Administrative Procedure Act." *Cross v. United States*, 512 F.2d 1212, 1216 (4th Cir. 1975).  *De novo* review requires that "the district court 'must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings.'" *Mahmood v. United States*, Civil Action No. 12-cv-0228 (July 24, 2012)(citing *Ibrahim v. United States*, 834 F.2d 52, 53-54 (2d Cir. 1987); *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975)).  And while *de novo* review does not *per se* entitle an aggrieved retailer to a trial on the merits, it is indisputable that the federal government does not have an entitlement to summary judgment prior to discovery unless it would be "impossible for Plaintiff to meet its burden." *ANS Food Market v. United States*, Civil Action No. 14-cv-2071 (April 22, 2015).

Defendant's Motion to Dismiss Should Be Denied

The United States' motion ostensibly seeks dismissal of the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). To survive a motion to dismiss, a complaint's factual allegations must be enough to raise a right to relief above the

speculative level; stated differently, a complaint "must contain enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Review of the Complaint reveals that it clearly states a plausible cause of action for judicial review of FNS's Final Agency Decision. It contains detailed allegations regarding administrative proceedings below and contains particularized facts regarding Harry's Deli, its SNAP authorization, FNS's withdrawal of its SNAP authorization, and the agency's Final Agency Decision. The Complaint also alleges that administrative remedies have been exhausted and provides the statutory and regulatory basis for this Court's jurisdiction over this matter.

Not surprisingly, the Defendant's Motion to Dismiss contains no argument that the Complaint is not well-pleaded or that the United States has not been placed on adequate notice of the claims against it. The United States' legal arguments are devoted entirely to why it believes that Harry's Deli cannot meet its burden of proof; those arguments are premised upon a plethora of references to factual matters outside of the four corners of the Complaint. It is therefore evident that the United States is not seeking dismissal of the Complaint; rather, it is seeking summary judgment prior to submitting its answer and prior to permitting the Plaintiff to engage in any discovery. As noted above, this action is not one arising under the APA; to the contrary, Congress clearly intended to provide aggrieved SNAP retailers with the opportunity to engage in discovery in order to establish, by a preponderance of the evidence, that FNS did not have a proper basis for its Final Agency Decision. As noted by Judge Bredar in *ANS Food Market,* "while the agency's action enjoys a presumption of validity, Plaintiff must be permitted an opportunity for rebuttal."

The Plaintiff respectfully submits that the United States' motion to dismiss borders on the frivolous. Undersigned counsel does not make this contention lightly. But the absence of any

argument supporting *dismissal* of the Complaint, when coupled with the fact that the United States has answered two extremely similar complaints for judicial review of Final Agency Decisions affirming FNS's withdrawal of SNAP retailers' licenses based on the determination that each retailer was a restaurant, supports such a conclusion. *See Amana Food Services v. United States*, Case No. 2:19-cv-11444-NGE-RSW (E.D. Mich.) and *T&K Associates, LLC v. United States*, 1:19-cv-02259-MLB (N.D. Ga.). Accordingly, Plaintiff J&K Deli, Inc. respectfully submits that this Court should deny the portion of Defendant's motion that seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

This Court Should Deny or Defer Defendant's Motion for Summary Judgment

  Defendant's misnomered motion to dismiss is devoted nearly exclusively to arguments supporting summary judgment. Defendant's motion should be denied because this action is in its infancy. No discovery has been taken and Defendant's motion is wholly premature. It is little more than a misguided effort by the United States to knock out Plaintiff's complaint without providing it with a full and fair opportunity to prove that the Final Agency Decision is not based on a preponderance of the evidence. What makes the United States' effort to seek summary judgment at this juncture even more egregious is that FNS held all of the cards during administrative proceedings. For example, Harry's Deli could not conduct any investigation to determine where its customers consumed prepared foods purchased at the Store because no discovery is available during those proceedings and no evidentiary hearings are permitted.

  Where Harry's Deli's intended for its customers to consume prepared foods is of central importance to this case because FNS's regulation does not characterize a store as a restaurant unless more than 50% of its gross receipts are derived from sales of (a) foods cooked or heated on-

site, whether pre-sale or post-sale; and (b) prepared foods not intended for home preparation or consumption. Similarly, where Harry's Deli's customers intended to consume prepared foods they purchased is of similar importance. But the Administrative Record contains no evidence regarding where Harry's Deli or its customers who purchased prepared foods during the three-month period that FNS requested sales receipts for and other documentation in its April 3, 2019, correspondence intended to consume those foods.

Review of the United States' memorandum reveals it effectively ignores the "not intended for home preparation or consumption" portion of FNS's regulation. This is not surprising because the Final Agency Decision contains no discussion or analysis of where prepared foods purchased by Harry's Deli's customers during the three-month period were consumed or were intended to be consumed. It also does not address whether the intent of the retailer or the consumer controls. Simply put, sales of prepared foods sold by Harry's Deli cannot be used by FNS as a proper basis for concluding that it is a restaurant without first determining whether those prepared foods were not intended for home consumption or home preparation.

If the intent of the retailer controls, summary judgment for the United States should be denied and entered for Harry's Deli because its intent was for customers to consume prepared foods at home. See Declaration of Ho Seong Hwang, at ¶ 8 attached hereto as Exhibit A ("Hwang Declaration"). If the issue turns on the intend of Harry's Deli's customers, FNS should have conducted an investigation or permitted Harry's Deli to do so by providing it with contact information for its customers that redeemed SNAP at the store during the three-month period. While no such investigation was conducted, had one been done, it would have confirmed what J&K's owner already knows and attested to: that the majority of Harry's Deli's customers consume prepared foods purchased at the store at home. Hwang Declaration at ¶ 9. Conversely, without

having a factual basis that prepared foods were not consumed at home, FNS did not have any basis to determine that a majority of Harry's Deli's gross receipts were (a) foods cooked or heated on-site, whether pre-sale or post-sale; and (b) prepared foods not intended for home preparation or consumption.  It is also important to note that Harry's Deli sold virtually no foods cooked or heated on-site; the only hot food sold at Harry's Deli is soup during winter months. *Id.* at ¶ 7.  Soup sales represent less than 1% of Harry's Deli's average daily gross receipts. *Id.*

In the event that this Court is not inclined to deny Defendant's motion for summary judgment at this time, it should defer consideration thereof until after permitting the Plaintiff to engage in limited discovery related to where its customers who purchased prepared foods at the Store during the three-month period consumed such foods.  It is well settled in this circuit that summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

The Declaration of Stewart Fried, attached hereto as Exhibit B, demonstrates specified reasons why the Plaintiff cannot present facts essential to justify its opposition.   Discovery is necessary because determining where prepared foods purchased at Harry's Deli's during the three-month period were intended to be consumed could not have been done during administrative

proceedings because no discovery is permitted therein. Declaration of Stewart Fried, at ¶ 4. Harry's Deli could not independently determine this information because it has no ability to after-the-fact identify its customers who purchased prepared foods during the three-month period except for those customers who paid with SNAP benefits. That information is available only from state agencies that issue EBT cards to SNAP beneficiaries. Id. at ¶ 6. State agencies are generally prohibited by federal law from divulging such household information to entities other than federal or state agencies except pursuant to a subpoena or other court order and generally following entry of a protective order restricting use of such information. See e.g. 7 U.S.C. § 2020(e)(8); 7 C.F.R. § 272.1(c).

Harry's Deli submits that permitting it to engage in limited discovery by serving subpoenas on the Maryland Dept. of Human Services and other state agencies that issued EBT cards to persons who used SNAP benefits at the store during the three-month period will permit it to identify contact information for those customers. Thereafter, Harry's Deli can serve subpoenas for deposition on those customers in order to procure testimony regarding where they intended to consume food purchased at the Store. Fried Declaration, at ¶ 8. This information will likely permit Harry's Deli to conclusively rebut FNS's Final Agency Decision assuming their customers testify that they intended to consume prepared foods purchased at the Store at home.

Additionally, Harry's Deli will seek to serve written discovery on the United States and seek to take one or more depositions, pursuant to Fed. R. Civ. P. 30(b)(6), of the FNS designee with knowledge regarding its "Ineligible Firms" regulation and of FNS's Administrative Review Officer ("ARO") who issued the FAD. That discovery is likely to show whether FNS issued any guidance or otherwise internally discussed that portion of its regulation and how, if at all, FNS interpreted the term "not intended for home preparation or consumption." It will also confirm the

Plaintiff's belief that the ARO did not determine where Harry's Deli's customers intended to consume prepared foods purchased at the Store. Fried Declaration, at ¶ 10.

      Finally, Harry's Deli submits that while it believes that discovery is required in order to properly oppose Defendant's summary judgment motion, the Hwang Declaration alone sufficiently establishes an adequate basis supporting denial thereof.  This Court cannot reconcile Hwang's personal knowledge regarding his intent that his customers consume prepared foods at home or where they intended to consume such foods.  It is clear that they do not eat at Harry's Deli because it has no tables and chairs. Hwang Declaration, at ¶ 5.  It is also undisputed that most of them consume such foods at home. Id., at ¶ 9.  Review of the Administrative Record reveals that it contains no evidence regarding whether any prepared foods purchased at the Store during the three-month period were consumed at home or not.  Absent conclusive evidence in the Administrative Record that prepared foods purchased at Harry's Deli were not for home consumption, entry of summary judgment would be inappropriate and erroneous because the United States has failed to prove that it is entitled thereto by any measure.  When viewed in the context of the applicable summary judgment standard, the United States' motion should be denied because there is no basis for this Court to conclude that there is no genuine dispute as to any material facts.  At a minimum, the issue of where Harry's Deli's customers intended to consume prepared foods remains unsettled; without discovery, that issue cannot be determined by this Court with certainty. Accordingly, this Court should either deny Defendant's motion for summary judgment or defer ruling thereon until after permitting the Plaintiff to conduct limited discovery.

## **REQUEST FOR HEARING**

Pursuant to Local Rule 105(6), the Plaintiff respectfully requests that this Court convene a hearing on the Defendant's motion. The Plaintiff submits that hearing from the parties via oral argument will serve the interests of justice.

WHEREFORE, the Plaintiff respectfully requests that the Court deny the Defendant's motion and/or defer ruling thereon in order to permit the Plaintiff to conduct discovery necessary to properly respond thereto.

Respectfully submitted this 30th day of September 2020.

By: /s/ J. Mason Weeda
Joseph Mason Weeda (D. Md. Bar No. 18276)
Stewart D. Fried (*pro hac vice* application forthcoming)
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., # 3000
Washington, D.C. 20006
(202) 518-6326 – Direct Dial
sfried@ofwlaw.com

Attorneys for Plaintiff J&K Deli, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of September, 2020, a copy of the foregoing was served via the CM/ECF system and via e-mail to:

>Matthew Haven, Esq.
>Assistant United States Attorney
>36 South Charles St., 4th Floor
>Baltimore, MD 21201
>matthew.haven@usdoj.gov

/s/ Stewart D. Fried
Stewart D. Fried