IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| J&K DELI, INC. | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: 1:19-cv-03282-JMC |
| UNITED STATES OF AMERICA, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff J&K Deli, Inc. d/b/a Harry's Deli, Inc. ("Harry's Deli") brings this action against the Defendant United States Department of Agriculture ("USDA") under the Food Nutrition Act of 2008 (the "Food Nutrition Act" or the "Act"). *See* 7 U.S.C. § 2011 *et seq.* In April 2019, the Food and Nutrition Service ("FNS") of the USDA temporarily withdrew Harry's Deli's authorization to participate in the Supplemental Nutrition Assistance Program ("SNAP"). Plaintiff filed a complaint for judicial review to appeal the USDA's final agency decision. (ECF No. 1). Presently before the Court is Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. (ECF No. 20). The issues have been fully briefed (ECF Nos. 20, 27, 28) and no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2018). For the reasons more fully explained below, Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, treated as a motion for summary judgment, is GRANTED.

## BACKGROUND

### I. *The Supplemental Nutrition Assistance Program*

SNAP, formerly known as the food stamp program, "provides eligible households with [SNAP benefits] that may be used to purchase qualifying food items at authorized retail stores."

1

*AJS Petroleum, Inc. v. United States*, Civ. No L-11-1085, 2012 WL 683538, at *1 (D. Md. Mar. 1, 2011) (citing 7 U.S.C. § 2011 *et seq.*).  SNAP is intended to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power" for eligible households.  7 U.S.C. § 2011.  Therefore, SNAP benefits "shall be used only to purchase food from retail food stores which have been approved for participation."  *Id.* at § 2013(a).  "SNAP beneficiaries are awarded benefits in the form of an Electronic Benefits Transfer ("EBT") card, which is akin to a debit card and can be used only for the purchase of food and certain other eligible items sold by approved SNAP retailers."  *Green Apple Grocery and Deli v. United States Dep't. Agric.*, Civ. No. RDB-19-1408, 2021 WL 533730, at *1 (D. Md. Feb. 2, 2021) ("*Green Apple*") (citing 7 U.S.C. §§ 2013(a); 2016(j); 7 C.F.R. § 271.2).

Food stores must file an application to FNS to become an authorized SNAP retailer. 7 C.F.R. § 278.1(a).  The applicant must provide adequate "data and information on the nature and scope of the firm's business for FNS to determine whether the applicant's participation will further the purposes of the program."  *Id.* at § 278.1(b).  In determining a food store's eligibility to participate in SNAP, FNS analyzes, *inter alia*, whether the store qualifies as a "retail food store." A retail food store is

> an establishment, house-to-house trade route, or online entity that sells food for home preparation and consumption and—
>> (A) offers for sale, on a continuous basis, a variety of at least 7 foods in each of the 4 categories of staple foods specified in subsection (q)(1), including perishable foods in at least 3 of the categories; or
>> (B) has over 50 percent of the total sales of the establishment or route in staple foods[.][1]

---

[1] "Staple foods" is defined as "food in the following categories: (A) Meat, poultry, or fish[;] (B) Bread or cereals[;] (C) Vegetables or fruits[; and,] (D) Dairy products.  7 U.S.C. § 2012(q)(1); 7 C.F.R. § 271.2.  The term does *not* include "accessory food items, such as coffee, tea, cocoa, carbonated and uncarbonated drinks, candy, condiments, and spices."  7 U.S.C. § 2012(q)(2); 7 C.F.R. § 271.2.

7 U.S.C. § 2012(o)(1)(A)-(B).  To make the determination, FNS relies on information obtained by "visual inspection, sales records, purchase records, counting of stockkeeping units, or other inventory or accounting recordkeeping methods that are customary or reasonable in the retail food industry."  *Id.* at § 2012(o)(1)(B); 7 C.F.R. § 278.1(b)(1)(i)(B).

Once approved, SNAP retailers are responsible for maintaining eligibility in the program. FNS periodically reviews authorized stores and may disqualify an approved retail food store that violates the Act or its implementing regulations.  7 U.S.C. § 2021(a); 7 C.F.R. § 278.6.  "In determining whether disqualification is warranted, FNS investigators may rely on evidence that includes 'facts established through on-site investigations, inconsistent redemption data, [or] evidence obtained through a transaction report under an electronic benefit transfer system.'"  *AJS Petroleum*, 2012 WL 683538, at *1 (D. Md. Mar. 1, 2012) (quoting 7 U.S.C. § 2021(a)(2); 7 C.F.R. § 278.6(a)).

When a retail food store is disqualified from participating in SNAP, a notice is issued to the store.  7 U.S.C. § 2023(a)(1).  The store may file a request within ten days for administrative review.  *Id.* at § 2023(a)(3).  If the store requests review, the matter is reviewed by the USDA FNS Administrative Review Branch, which renders a Final Agency Decision ("FAD").  The FAD takes effect thirty days after the date of delivery of the decision to the retailer.  *Id.* at § 2023(a)(5); 7 C.F.R. § 279.5.  If a store is aggrieved by the FAD, the store may seek *de novo* judicial review in state or federal court.  7 U.S.C. §2023(a)(13)–(15); 7 C.F.R. § 279.5.

## II.    *Harry's Deli*

Ho Seong Hwang owns and operates Harry's Deli, located in Baltimore, Maryland.  (ECF No. 1 at 3; Administrative Record ("A.R.") at 2).  Harry's Deli submitted its online SNAP reauthorization application ("Reauthorization Application")—form FNS-252-R—to FNS on

November 19, 2018.  (ECF No. 1 at 4; A.R. 482).  The Reauthorization Application required Harry's Deli to enter its sales figures for a one-year period.  (ECF No. 20-3 at 2).  In 2017, Harry's Deli's total sales amounted to $337,600.  *Id.*  Of the total sales, Harry's Deli indicated that: 5%, or $16,880, were attributable to hot foods (*e.g.*, hot coffee, hot soup, hot pizza, etc.); 20%, or $67,520, were attributable to cold prepared foods (*e.g.*, sandwiches, salads, etc.); 10%, or $33,760, were attributable to accessory foods (*e.g.*, ice cream, potato chips, soda pop, doughnuts, etc.); and 65%, or $219,440, were attributable to staple foods (*e.g.*, rice, milk, beef, apples, etc.).  *Id.*

An FNS "Reviewer" conducted a store visit at Harry's Deli on February 27, 2019 and completed a corresponding FNS Survey.  A.R. 68–75.  In the FNS Survey, the Reviewer indicated that Harry's Deli has a food preparation area, there is a "deli or prepared food section," with prices posted for meats/cheeses, prepared salads, and prepared/made-to-order sandwiches, and that the store stock is being used in the deli/prepared food section.  *Id.* 70.  The Reviewer further noted that four lunch meat packages were the most expensive SNAP eligible food items.  *Id.* at 69; 70.  Finally, the Reviewer inventoried the staple foods that Harry's Deli had available for purchase.  *Id.* at 71.

By letter dated April 3, 2019, FNS advised Harry's Deli that additional information was needed to determine if Harry's Deli met the eligibility requirements for SNAP authorization.  A.R. 93.  To verify that Harry's Deli's reported sales were accurate, FNS requested various documents, including "[e]nd-of-day sales summary reports that are electronically generated by [Harry's Deli's] cash register system"; "[a]n overview document . . . that [Harry's Deli] create[s] which totals the 3 months of end-of-day sales summary reports, . . . [broken into] "(1) heated or prepared foods, (2) non-foods, (3) accessory foods, (4) staple foods, and (5) charges for food heating services"; and

"[v]erification of total gross retail sales for the last 1 year period." *Id.* Harry's Deli complied and submitted the requested documents to FNS on April 10, 2019. *Id.* at 95–142.

Harry's Deli provided FNS with an end-of-day report encompassing all sales from January 1, 2019 to March 31, 2019. A.R. 104–10. During the three-month period, Harry's Deli's sales totaled $128,907.31. *Id.* at 106–07; 110. The end-of-day report further divides Harry's Deli's total sales into specific food categories with the corresponding amount of sales in each. The following breakdown, generated by Harry's Deli, accounts for the total $128,907.31 in revenue: Sandwich Special ($64,770.36); Sandwiches ($38,466.51); Luncheon Meat (PAY EBT) ($8,768.22); Grocery ($6,302.05); Coffee ($4,935.13); GROCERY ($3,292.55); Salad ($870.71); Cheese ($840.55); Soup ($487.25); and Cheese Cake ($181.00).[2] *Id.* at 106–07. The report further breaks down Harry's Deli's sales in each category by individual item. *Id.* at 107–10. Without recounting each individual item here, it generally appears that the report accurately categorizes the items sold.[3]

Harry's Deli also provided an excel spreadsheet that it created, as requested by FNS, entitled "Harry's Deli – Overview Summary January, 2019 to March, 2019" ("Overview Summary"). A.R. 120–27. The Overview Summary organizes Harry's Deli's sales by month, and provides similar categories as the end-of-day report. *Id.* However, the Overview Summary also organizes each month's sales with labels that mirror C.F.R. designations: Accessory Foods, Heated/Prepared Foods, and Staple Foods. *Id.* Additionally, the columns include "Category,"

---

[2] It is worth noting that the end-of-day report category breakdown reflects a $-7.02 "Invoice Discount" to reach the $128,907.31 total. A.R. 106.

[3] For example, the "Cheese" category accounts for the sale of American Cheese ($284.54), Hot Pepper Cheese ($126.82), and Provolone Cheese ($94.42), among others. A.R. 107. The Court will note, however, that the "Salad" category more accurately refers to "Shrimp," "Chicken," "Macaroni," "Tuna," "Potato," and "Cole Slaw," salads. A.R. 109.

"Item Name," "Item Name 2," "Barcode," "Price," "Q[uanti]ty," and "Total." *Id.*[4] Without delving into the specifics of each line item, the data in Harry's Deli's Overview Summary aligns with the information contained in the end-of-day report.[5] Harry's Deli generated $48,463.89 in January 2019, $34,983.83 in February 2019, and $45,466.61 in March 2019, for a total of $128.914.33.[6] *Id.*

After completing its review of the information gathered at the store visit and submitted by Harry's Deli, the FNS Retailer Operations Division notified Harry's Deli of its reauthorization determination by letter dated April 30, 2019. A.R. 143–44. FNS concluded that Harry's Deli "is ineligible to participate in SNAP as an authorized retailer," and withdrew Harry's Deli's authorization for a period of six months.[7] *Id.* In the letter notice, FNS reasoned that Harry's Deli "did not meet the definition and requirements of a retail food store," and "is primarily a restaurant[] because more than 50 percent of [its] total gross retail sales are from 'heated foods' and/or 'prepared foods.'" *Id.* On May 3, 2019, Harry's Deli requested administrative review of FNS's decision to withdraw its SNAP authorization. *Id.* at 145. Additionally, Harry's Deli sought, by FOIA request, a "full and complete file" from FNS. *Id.* Through counsel, Harry's Deli sent a letter to FNS on September 5, 2019, and asserted that Harry's Deli "is a food store offering for sale all of the required food items necessary for [a] retailer to participate in" SNAP. *Id.* at 160.

---

[4] For example, the first entry from "01/01/19 to 01/31/19" reads as follows: "Accessary [sic] Foods" – "Cheese Cake" – "Cherry" – "Cherry" – [blank] – "[$]2.35" – "8" – "[$]18.8[0]."

[5] For example, Harry's Deli's top-selling "Sandwich Special" is the "American Cold Cut," which fetched $14,953 during the relevant timeframe according to the end-of day report. A.R. 109. The Overview Summary indicates the American Cold Cut Sandwich Special, a "Heated/Prepared Food," generated $6,246.25 in January 2019, $3,605.25 in February 2019, and $5,101.50 in March 2019, for a total of $14,953. A.R. 120, 123, 125.

[6] The Overview Summary does not include the $-7.02 "invoice discount" as referenced in the end-of-day report and explained, *supra*.

[7] During the pendency of this litigation, this Court enjoined Defendant's withdraw of Harry's Deli's SNAP authorization until this Court entered a judgment on the merits. (ECF No. 15).

With its letter, Harry's Deli submitted three additional months of electronically generated cash register receipts. *Id.*

The Administrative Review Branch of the USDA FNS issued its Final Agency Decision on October 29, 2019. A.R. 482–87. The FAD sustained the Retail Operations Division's decision to withdraw Harry's Deli's SNAP authorization. *Id.* at 486. The decision relied on documentation provided by Harry's Deli, which showed that more than 80% of total gross sales was attributable to prepared food items. *Id.* The FAD concluded that

> [a]lthough [Harry's Deli] may sell a variety of staple food items, it is more likely true than not true that the majority of foods in the store are actually sold prepared and/or hot and ready-to-eat. According to 7 CFR § 278.1(b)(1) of the SNAP regulations, such a store is considered a restaurant and is not eligible for SNAP participation as a retail food store. Therefore, [Harry's Deli] does not qualify as a retail food store for the purposes of SNAP participation.

*Id.* Harry's Deli sought judicial review by filing a Complaint in this Court on November 14, 2019. (ECF No. 1).

## STANDARD OF REVIEW

### I.     *Motion to Dismiss, or in the Alternative, for Summary Judgment*

Defendant has filed a dispositive motion styled as a motion to dismiss—pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6)—or, in the alternative, for summary judgment—pursuant to FRCP 56. (ECF No. 20). In filing the motion, Defendant attached exhibits, including the Administrative Record developed by FNS. (ECF No. 20-2; 20-3).

The purpose of a Rule 12(b)(6) motion "is to test the sufficiency of a complaint and 'not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A Rule 12(b)(6) motion "constitutes an assertion by a defendant that, even if the facts alleged by plaintiff are true, the complaint fails as a matter of

law, to state a claim upon which relief can be granted." *Jones v. Chapman*, Civ. No. ELH-14-2627, 2015 WL 4509871, at *5 (D. Md. Jul. 24, 2015).

In resolving a motion under Rule 12(b)(6), a court considers matters only within the pleadings. Whether a complaint states a claim for relief is assessed in accordance with the pleading requirements of FRCP 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a 'plaintiff must provide the grounds of his entitlement to relief' and this requires 'more than labels and conclusions, or a formulaic recitation of the elements of a cause of action.'" *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). In reviewing a Rule 12(b)(6) motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l. Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995). Further, the Court must draw all reasonable inferences "derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

If, in resolving a Rule 12(b)(6) motion, a party presents, and the court considers, matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Humphrey*, 885 F. Supp at 136. The Court retains "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Verderamo v. Mayor & City Council of Baltimore*, 4 F. Supp. 3d 722, 729–30 (D. Md. 2014) (citations omitted). This Court elects to consider Defendant's exhibits (and Plaintiff's affidavits pursuant to FRCP 56(d), *see* ECF No. 27-1; 27-2), and therefore will analyze the Motion as one for summary judgment.

8

FRCP 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a Rule 56 motion, the court must view the facts, and reasonable inferences drawn from the facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The moving party bears the burden "to demonstrate the absence of any genuine dispute of material fact." *Jones v. Hoffberger Moving Servs.*, 92 F. Supp. 3d 405, 409 (D. Md. 2015). A "dispute as to a material fact 'is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## II.      *Judicial Review of a Final Agency Decision Withdrawing SNAP Authorization*

Judicial review of an FNS decision to withdraw a food store's SNAP authorization "shall be a trial *de novo*, . . . in which the court shall determine the validity of the questioned administrative action." 7 U.S.C. § 2023(a)(15). In this context, *de novo* review means that the retailer must establish by a preponderance of the evidence that the agency determination should be set aside. *AJS Petroleum*, 2012 WL 683538, at *4 (D. Md. Mar. 1, 2012). In the absence of a genuine dispute of material fact, "summary judgment is a proper means of disposing of a request for [judicial] review." *Mahmood v. United States*, Civ. No. WMN-12-0228, 2012 WL 3038638, at *2 (D. Md. Jul. 24, 2012) (quoting *Bon Supermarket & Deli v. United States*, 87 F. Supp. 2d 593, 599 (E.D.Va. 2000)); *see also Idias v. United States*, 359 F.3d 695 (4th Cir. 2004). Because "the scope of judicial review extends to the period of administrative sanction," *Cross v. United States*, 512 F.2d 1212, 1215 (4th Cir. 1975), the Court must review the penalty imposed by FNS if it determines that a violation of the Food Nutrition Act, or its implementing regulations,

occurred.   In such cases, FNS's penalty will be upheld unless it is found to be "arbitrary or capricious." *Mahmood*, 2012 WL 3038638, at *2 (D. Md. Jul. 24, 2012) (quoting *Ahmed v. United States*, 47 F. Supp. 2d 389, 393 (W.D.N.Y. 1999)).

## DISCUSSION

The crux of Defendant's argument is that "the documents provided by Harry's Deli[—i.e., the documents attached to its April 10, 2019 response to FNS—]show that FNS was correct when it found that Harry's Deli impermissibly derives more than 50% of its revenue from heated, hot, or prepared foods."  ECF No. 20-1 at 11.  Defendants contend that, because "[t]he C.F.R. makes clear that food stores with 'more than 50 percent of their gross retail sales in . . . cold prepared foods not intended for home preparation and consumption,' are not eligible to participate in SNAP," FNS properly withdrew Harry's Deli's SNAP authorization. *Id.* (citing 7 C.F.R. §§ 271.2; 278.1(b)(1)(iv)).  To make its point, Defendant spends much of its briefing calculating the data provided in Harry's Deli's end-of-day report and Overview Summary to show that more than 80% of Harry's Deli's total gross retail sales are attributable to prepared foods items not intended for home preparation and consumption.  (ECF No. 20-1 at 11–13).

Plaintiff's Response, perhaps tellingly, does not meaningfully address any of the sales data or information submitted to FNS by Harry's Deli and which served as the basis for FNS's withdrawal of SNAP authorization.  (ECF No. 27).  Instead, Harry's Deli attacks the administrative review process and SNAP regulations. *Id.* at 8–9.  According to Harry's Deli, "FNS held all of the cards during [the] administrative proceedings," and "Harry's Deli could not conduct any investigation." *Id.* at 8.  Harry's Deli sought (and continues to seek) information pertaining to where its customers intended to (and did in fact) consume prepared foods purchased from the store. *Id.*  In short, Harry's Deli contends that "sales of prepared foods sold by Harry's Deli cannot be

used by FNS as a proper basis for concluding that it is a restaurant without first determining whether those prepared foods were not intended for home consumption or home preparation." *Id.* at 9.  Indeed, Harry's Deli goes so far as to say that "FNS did not have any basis to determine that a majority of Harry's Deli's gross receipts were (a) cooked foods or heated on-site, whether pre-sale or post-sale; and (b) prepared foods not intended for home preparation or consumption." *Id.* at 10.[8]

Harry's Deli avers that this Court should defer or deny summary judgment and permit discovery to proceed.[9]  Limited discovery, it proposes, will identify contact information for Harry's Deli's customers, which in turn will permit Harry's Deli to serve subpoenas "to procure testimony regarding where [the customers] intended to consume food purchased at the [s]tore." ECF No. 27 at 11.  Further, Harry's Deli seeks to serve written discovery on Defendant to shed light on FNS's interpretation of the term "not intended for home preparation or consumption." *Id.*

---

[8] In its Reply, Defendant asserts that Harry's Deli misconstrues 7 C.F.R. § 278.1(b)(1)(iv) and incorrectly focuses solely on the "hot and/or cold prepared foods not intended for home preparation or consumption" language contained in the regulation.  (ECF No. 28 at 4).  The regulations do not require a determination, as Plaintiff suggests, as to "whether customers intend to prepare Harry's Deli food at home **or** consume Harry's Deli food at home." *Id.* (Emphasis in original).  Instead, Defendants contend that if a particular sale of food fails to satisfy either condition— that is the food is "not intended for home preparation" or the food is "not intended for home consumption"—it does not qualify for SNAP, and revenue derived therefrom counts against the store's 50% threshold. *Id.* at 5–6.

[9] This argument stems primarily from FRCP 56(d), which provides,

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
   (1) defer considering the motion or deny it;
   (2) allow time to obtain affidavits or declarations or to take discovery; or
   (3) issue any other appropriate order.

I.      **"Home Preparation and Consumption": Interpreting 7 U.S.C. § 2012 and 7 C.F.R. § 271.2**

This Court's analysis naturally begins with the applicable statutory and regulatory language pertaining to retail food stores.  The Fourth Circuit recently reiterated the foundational principles at issue when interpreting the C.F.R.:

> Regulatory interpretation is a question of law.  [This Circuit] construes a regulation using the same rules applicable to statutory construction.  If the language of the regulation "has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written."  If the language is ambiguous, "the intent of Congress or the Agency concerning the disputed language must be resolved through application of various settled rules of construction and interpretation, including analysis of the underlying statute's structure and purpose."

*United States v. Moriello*, 980 F.3d 924, 934 (4th Cir. 2020) (citations omitted).

Under the Food Nutrition Act, a "retail food store" is defined, in part, as "an establishment . . . that sells food for home preparation and consumption."  7 U.S.C. § 2012(o)(1).  The establishment must also either "offer[] for sale, on a continuous basis, a variety of at least 7 foods in each of the 4 categories of staple foods . . . , including perishable foods in at least 3 of the categories"; or have "over 50 percent of the total sales of the establishment . . . in staple foods, as determined by visual inspection, sales records, purchase records, counting of stockkeeping units, or other inventory or accounting recordkeeping methods that are customary or reasonable in the retail food industry."  *Id.* at § 2012(o)(1)(A)–(B).  This case turns on the latter of these eligibility criteria.  The corresponding definition of a "retail food store" in 7 C.F.R. § 271.2 is nearly identical.[10]  The regulatory provision, however, provides more:

---

[10] The term "retail food store" as defined in 7 C.F.R. §271.2 means

> [a]n establishment or house-to-house trade route that sells food for home preparation and consumption normally displayed in a public area, and either offers for sale qualifying staple food items on a continuous basis, evidenced by having no fewer than seven different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety, including at least one variety of perishable foods in at least three such categories, (Criterion A) as set forth in § 278.1(b)(1) of this chapter, or has more than 50

> Entities that have more than 50 percent of their total gross retail sales in: Food cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation and consumption, including prepared foods that are consumed on the premises or sold for carry-out are not eligible for SNAP participation as retail food stores under § 278.1(b)(1) of this chapter.

7 C.F.R. § 271.2.

This Court finds 7 C.F.R. § 271.2, and its definition of what qualifies as a "retail food store," unambiguous. Therefore, the Court will apply the regulation as written. *Moriello*, 980 F.3d at 934. An entity is not eligible for SNAP participation if it derives more than 50% of its gross retail sales from prepared foods not intended for home preparation **and** consumption. *See* 7 C.F.R. § 271.2. The regulation expressly clarifies that prepared food "sold for carry-out" is the sort of food that is "not intended for home preparation and consumption." *See id.*

From the Court's view, Plaintiff's argument rises and falls on this Court's interpretation of 7 C.F.R. § 278.1(b)(1)(iv), which addresses "ineligible firms." As relevant here, an ineligible firm encompasses

> firms that are considered to be restaurants, that is, firms that have more than 50 percent of their total gross sales in foods cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation or consumption, including prepared foods that are consumed on the premises or sold for carryout, shall not qualify for participation as retail food stores under Criterion A or B. This includes firms that primarily sell prepared foods that are consumed on the premises or sold for carryout.

7 C.F.R. § 278.1(b)(1)(iv). Plaintiff emphasizes the disjunctive "or" language of § 278.1(b)(1)(iv): "and hot and/or cold prepared foods not intended for home preparation or consumption." (ECF No. 27 at 4–5; 8–9). Plaintiff's interprets the regulation to mean that retail

---

> percent of its total gross retail sales in staple foods (Criterion B) as set forth in § 278.1(b)(1) of this chapter as determined by visual inspection, marketing structure, business licenses, accessibility of food items offered for sale, purchase and sales records, counting of stockkeeping units, or other accounting recordkeeping methods that are customary or reasonable in the retail food industry as set forth in § 278.1(b)(1) of this chapter.

sales will not count towards the 50% threshold if the food is either prepared at home or consumed at home.  From this reading, Plaintiff then suggests that, in order for FNS to have a sufficient basis to withdraw SNAP authorization, FNS was required determine whether Harry's Deli's prepared-food-purchasing customers intended to consume the prepared foods at home or elsewhere.  *Id.* at 9.  Under this theory, food consumed by customers at home would not count toward the 50% threshold eligible retail food stores may not surpass.

However, this narrow reading must fail.  Under 7 C.F.R. § 278.1(b)(1)(iv), total gross sales arising from food not intended for home preparation count against the 50% threshold that, if exceeded, will disqualify a store from SNAP participation.  Similarly, total gross sales arising from food not intended for home consumption count against the 50% threshold.  The disjunctive "or" used in 7 C.F.R. § 278.1(b)(1)(iv), to describe ineligible firms, conveys that if either condition is not met—that is, the food is not intended for home preparation, or, not intended for home consumption—the revenue generated from the item will count against the 50% threshold.  If 50% or more of a store's total gross sales come from these types of food items, it is an "ineligible firm" that does not qualify for participation in SNAP.  Moreover, Plaintiff's argument neglects to embrace the full language of the regulation, which expressly provides that "prepared foods . . . sold for carryout" are the sort of foods "not intended for home preparation or consumption." 7 C.F.R. § 278.1(b)(1)(iv).  Therefore, it is immaterial where a customer *actually* consumes prepared food items; if an item is "prepared" by the food store and sold for carryout (which could be consumed anywhere), it is not (and cannot be) intended for home preparation and consumption.

In sum, SNAP eligibility as a retail food store requires that an entity not derive more than 50% of its total gross retail sales from prepared foods not intended for home preparation and consumption, including prepared foods sold for carry-out.   7 U.S.C. § 2012(o)(1); 7

C.F.R. § 271.2.  It follows that a previously authorized retail food store may be deemed ineligible, and its authorization withdrawn, if more than 50% of its sales are later derived from prepared foods of this sort.  The Court now turns to Harry's Deli's sales during the relevant timeframe.

## II.     *Harry's Deli's Sales*

In applying the aforementioned eligibility criteria to new applicants and previously authorized retail food stores (during periodic review), the Food Nutrition Act and C.F.R. are clear: FNS determines a store's eligibility "by visual inspection, sales records, purchase records, counting of stockkeeping units, or other inventory or accounting recordkeeping methods that are customary or reasonable in the retail food industry."    7 U.S.C. § 2012(o)(1)(B); 7 C.F.R. § 278.1(b)(1)(i)(B).  Such a review maintains the feasibility and objectivity of the process. Here, Harry's Deli submitted, and FNS reviewed in reaching its determination: (1) the end-of-day report covering January 2019 to March 2019; and (2) Harry's Deli's Overview Summary.  A.R. 104–27.  Additionally, Harry's Deli consented to a visual inspection and an FNS Reviewer authored a report.  A.R.  68–74.  Accordingly, because the Court will conduct an independent review of this documentation, Plaintiff's assertion that the subjective intent of either the retailer or consumers has a bearing on the inquiry is immaterial.  (ECF No. 27 at 9–10).

After review of the Administrative Record, the Court finds that the agency action is valid because more than 50% of Harry's Deli's total gross retail sales are derived from hot and/or cold prepared foods not intended for home preparation and consumption, including foods sold for carry-out.    Harry's Deli's sales in the categories "Sandwich Special" and "Sandwiches" are quintessentially cold prepared foods not intended for home preparation and consumption, **and** are sold for carry-out.[11]  These categories include revenue from American Cold Cuts, Italian Cold

---

[11] It is undisputed that Harry's Deli does not have tables or chairs for in-store dining.  (ECF Nos. 27 at 12; 28 at 7).

Cuts, Turkey Subs, and Club Sandwiches, to name a few.  These items are prepared by Harry's Deli such that no "home preparation" is required and, because they are sold for carry-out, they can be consumed anywhere.   As such, all revenue derived from "Sandwich Specials" and "Sandwiches" counts against the 50% eligibility threshold contained in 7 C.F.R. § 271.2.

In all, the Sandwich Specials and Sandwiches categories are broken into forty-three different sandwich line items, accounting for $64,770.36 and $38,466.51 of Harry's Deli's sales, respectively, during the relevant time period.  A.R. 109–10.  Combined, these two categories represent $103,236.87—over 80%—of the total gross retail sales of $128,907.31.[12]  *Id.* at 110. Other hot and/or cold prepared foods or accessory food items, which also count against the 50% threshold, account for $6,474.09—or 5%—of Harry's Deli's total gross retail sales: Coffee ($4,935.13); Salad ($870.71); Soup ($487.25); and Cheese Cake ($181.00).  *Id.* at 106–07.  The remaining categories of Harry's Deli's sales make up only $19,203.37—or less than 15%—of total gross retail sales for the same three-month period.  These categories include SNAP eligible items and are largely staple foods: Luncheon Meat (PAY EBT) ($8,768.22); Grocery ($6,302.05); GROCERY ($3,292.55); Cheese ($840.55).  *Id.* at 106.

This analysis is confirmed by Harry's Deli's own record keeping, as detailed in the Overview Summary.  A.R. 120–27.  In January 2019, the "Heated/Prepared Foods" line items alone add up to $42,059.45 (more than 86%) of $48,463.89 in total January sales.  A.R. 120–22. In February 2019, line items of the same "Heated/Prepared Foods" category accounted for $27,627.57 (nearly 79%) of $34,983.83 in total February sales.  *Id.* at 122–25.  Finally, in March 2019, "Heated/Prepared Foods" represents $37,907.81 (83%) of $45,466.61 in total March sales.

---

[12] Just three sandwiches, the American Cold Cut, Italian Cold Cut, and Turkey Sub, account for $66,896.60 of Harry's Deli's gross retail sales from January 2019 to March 2019.  A.R. 109–10.

*Id.* at 125–27.  In each month, "Staple Foods" paled in comparison to "Heated/Prepared Food" sales.[13]

It is undisputable that Harry's Deli's total gross retail sales during the time in question far exceeded the allowable 50% limitation attributable to hot and/or cold prepared foods not intended for home preparation and consumption.  As a result, Harry's Deli does not qualify as a "retail food store" because it does not have "over 50 percent of the total sales of the establishment . . . in staple foods."  7 U.S.C. § 2012(o)(1)(B).

### III.    Request for Discovery

Defendant moves for summary judgment before answering Plaintiff's complaint and before discovery.  Plaintiff seeks discovery by Rule 56(d) affidavit, specifically to obtain Harry's Deli's SNAP customer information and learn where these customers intended to consume their food purchases.  (ECF No. 27-1; 27-2).  However, given the above discussion, the Court can confidently say that "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (citation omitted).

Additionally, this Court has granted pre-discovery judgment in favor of the United States in several SNAP cases.  *See Green* Apple, 2021 WL 533730, at *6 (D. Md. Feb. 2, 2021); *Negash v. United States*, Civ. No. RDB-17-1954, 2018 WL 3428716, at *4 (D. Md. Jul. 16, 2018), *aff'd*, No. 18-1869, 2019 WL 2005678 (4th Cir. May 7, 2019); *7-Eleven, Inc. v. United States*, Civ. No. GLR-15-0543, 2016 WL 5107129, at *3–4 (D. Md. Jan. 29, 2016); *Mahmood*, 2012 WL 3038638, at *1 n.4 (D. Md. Jul. 24, 2012); *AJS Petroleum*, 2012 WL 683538, at *5 (D. Md. Mar. 1, 2012).

---

[13] "Staple Foods" composed only $4,412.15 of total January sales, $5,576.46 of total February sales, and $5,208.07 of total March sales.  A.R. at 120–27.

The information and documents submitted by Harry's Deli to FNS, that FNS relied upon in making its initial determination and Final Agency Decision, is undeniable: more than 50% of Harry's Deli's gross retail sales from January 2019 to March 2019 are attributable to "prepared foods not intended for home preparation and consumption." Therefore, Plaintiff's demand for discovery fails.

### IV.   *Six-Month Disqualification*

Given this conclusion, FNS's decision to temporarily withdraw Harry's Deli's SNAP authorization for a period of six months was not arbitrary or capricious. *See Mahmood*, 2012 WL 3038638, at \*2 (D. Md. Jul. 24, 2012). FNS may impose a period of disqualification "for a reasonable period of time, not to exceed 5 years, upon the first occasion of disqualification." 7 U.S.C. § 2021(b)(1); *see also* 7 C.F.R. § 278.6 ("FNS may disqualify any authorized retail food store or authorized wholesale food concern from further participation in the program if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or [the Act's implementing regulations] . . . . Disqualification shall be for a period of 6 months to 5 years for the firm's first sanction."). Therefore, FNS's temporary disqualification cannot be said to be "unwarranted in law or without justification in fact." *Mahmood*, 2012 WL 3038638, at \*2 (D. Md. Jul. 24, 2012) (quoting *Ahmed*, 47 F. Supp. 2d at 393 (W.D.N.Y. Apr. 30, 1999)).

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 20), treated as a motion for summary judgment, is GRANTED**.** Accordingly, Judgment is entered in favor of Defendant United States of America.

A separate order will follow.

Date: March 21, 2021                        _____/s/_____

                                            J. Mark Coulson
                                            United States Magistrate Judge